The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Douglas E. Berger and the briefs and arguments on appeal. No additional witness testimony was received by the Full Commission. The appealing party has not shown good ground to receive further evidence or to amend the holding of the prior Opinion and Award. However, pursuant to its authority under G.S. § 97-85, the Full Commission has modified the Deputy Commissioner's decision regarding plaintiff's average weekly wage and the disability benefits to which he is entitled and enters the following Opinion and Award.
***********
 EVIDENTIARY RULINGS
All objections contained in the depositions of Rosa Britt, Dr. Kouba, and Dr. Atassi are ruled upon in accordance with the law and the Opinion and Award in this matter.
Because the parties did not stipulate to the admission of all Industrial Commission forms contained in the file, the Full Commission takes judicial notice of the Industrial Commission Form33R which was filed by defendants on 19 May 1997.
***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing on 8 July 1997 as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. Subsequent to the hearing, an index of medical records marked as stipulated exhibit 1 was received into evidence.
***********
Based upon the record of evidence, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing on 8 July 1997, plaintiff was a fifty-six year old male with a tenth grade education who had performed plastering work for over forty years.
2. Prior to his injury, plaintiff had worked out of state as a plasterer earning up to $21.58 per hour for a forty (40) hour work week. Plaintiff next worked for a plastering company called Astrostone, where he earned $12.00 per hour during a forty (40) hour work week, plus time and a half for overtime. In July of 1990 plaintiff was no longer working for Astrostone and opened his own plastering business.
3. On 12 August 1990, plaintiff was on a scaffold doing plastering work for his business when he fell six (6) feet down on to a concrete surface. Plaintiff's leg got caught in one of the rungs of the scaffold as he fell. Plaintiff landed on his back and his left foot as well as the back of his head. Plaintiff was transported to the Cape Fear Regional Hospital. As a result of his fall, plaintiff sustained a severe open fracture where the shin bone and the ankle bone met in plaintiff's left foot. Medical records reveal that plaintiff was not experiencing any back or neck pain when he was examined at the emergency room.
4. Subsequently, the parties entered into an Industrial Commission Form 21 Agreement for Compensation, which was approved by the Commission 17 October 1990. Through this Form 21, defendants admitted the compensability of the injury to plaintiff's ankle.
5. Prior to the 12 August 1990 injury by accident, plaintiff had been diagnosed as having sustained a herniated disc at the L4-5 level in his lower back. Plaintiff had an onset of back pain beginning on or about 25 July 1990 after he twisted his back working for another employer. A 27 July 1990 CT scan revealed that plaintiff had a narrowing of the disc spaces at the L5-S1 level as well. On 10 August 1990, Dr. Cilerberto placed the plaintiff on bed rest and restricted him from returning to work for an additional ten days. Dr. Cilerberto opined that plaintiff would be able to return to sedentary work after ten days, but that plaintiff would probably not be able to return to work as a plasterer for another four weeks.
6. Plaintiff was a co-owner and sole employee for defendant-employer at the time of his injury by accident. Because plaintiff's business had been operating for such a short period of time when he was injured, he had not yet received any income from this business.
7. Pursuant to the approved Form 21, defendants agreed to pay workers' compensation benefits to plaintiff based upon an average weekly wage of $540.00. At the time the parties entered the Form 21 Agreement in 1990, they agreed that this average weekly wage was subject to wage verification.
8. The wage of $540.00 as indicated on the Form 21 in question was based upon an Industrial Commission Form 22 Wage Chart. This Form 22 has been completed by plaintiff's wife, Mrs. Shirley Bartos, who was the book keeper for plaintiff's company [defendant-employer].
9. The Full Commission finds that there was no misrepresentation on the part of plaintiff or his wife in their completion and submission of the Form 22 in question, and that their testimony on this issue was credible for the following reasons: (1) after being sent the Form 22, plaintiff's wife spoke with an official of defendant-carrier and informed this person that plaintiff's business [defendant-employer] had just started operations; (2) this official then inquired as to whether there were records of the wages earned by plaintiff in prior positions; (3) it was then that plaintiff's wife referenced the pay stubs from plaintiff's prior job with Astrostone; (4) this same official from defendant-carrier verbally approved of the use of these pay stubs and records from Astrostone; (5) the certification language on the Form 22, which has been referenced by defendants, is boiler plate language contained on all Form 22s, and; (6) the fact that plaintiff's wife signed the certification after discussing this matter with an official of defendant-carrier is not indicative of any misrepresentation on her part but merely reflects her reasonable attempt to complete the Form 22 as instructed.
10. Defendants began payment of temporary total disability at a compensation rate based upon the Form 22 in question on 13 August 1990 and continued making payments through the date of the hearing on 8 July 1997. These payments were made pursuant to an approved Form 21. On 19 May 1997, defendants filed an Industrial Commission Form 33R in which there was no mention of this average weekly wage issue among their other listed defenses. Therefore, defendants had not raised this issue from 13 August 1990 through at least 19 May 1997.
11. Throughout the period from 13 August 1990 through 19 May 1997, defendants had ample time and opportunity to investigate any and all information related to this issue and this case. Additionally, the Form 22 in question had been completed according to instructions given by defendant-carrier's own personnel. Because defendants have offered no other explanation for the delay in raising issues related to plaintiff's average weekly wage, the Full Commission finds that this delay was unreasonable.
12. Plaintiff had been receiving benefits at a compensation rate based on the average weekly wage in question from 13 August 1990 through the date of the hearing on 8 July 1997, a period just short of seven (7) years. Should defendants prevail on this issue after this nearly seven year (7) delay, plaintiff, who had lived and organized his life and expenses based on his weekly compensation, would experience the dramatic reduction in his weekly benefits from $360.02 to the statutory minimum of $30.00. The injurious results and consequences for plaintiff from defendants' delay in raising this issue are obvious.
13. In addition to there not being any misrepresentation regarding the Form 22 and average weekly wage in question, the doctrine of laches should apply to defendants' contentions on this issue, thereby preventing defendants from raising such allegations.
14. As of 2 May 1994, plaintiff had reached maximum medical improvement regarding his left foot and ankle injury and had been assigned a forty percent (40%) permanent partial disability rating.
15. As a result of his 12 August 1990 injury by accident, plaintiff will eventually need an arthodesis performed on his left foot.
16. From 12 August 1990 through 12 February 1990, plaintiff was treated for his right foot injury by Dr. Kouba. During this seven month period, plaintiff did not make any complaints that he was experiencing any neck or back pain to Dr. Kouba. During this seven month period, plaintiff did not seek medical treatment for any neck or back pain from any other healthcare provider. On 12 February 1991, plaintiff began to complain of back and neck pain to Dr. Kouba.
17. A 23 April 1992 MRI revealed that plaintiff had a ruptured disc at the L4-5 level and that he had developed a ruptured disc at the C5-C6 level as well.
18. The 12 August 1990 injury by accident did not cause the L4-5 ruptured disc revealed in the 23 April 1992 MRI.
19. The 12 August 1990 injury by accident did not aggravate a pre-existing L4-5 disc herniation. Dr. Atassi's opinion that is contrary to this finding is based upon an inaccurate belief that plaintiff experienced pain in his neck and lower back immediately following the 12 August 1990 injury by accident.
20. Plaintiff's injury to his left ankle would not have masked plaintiff's pain coming from any disc herniations in plaintiff's lower back and neck to such an extent that he would not have reported this pain to Dr. Kouba during the seven months following his compensable injury by accident.
21. The 12 August 1990 injury by accident did not cause the C5-C6 ruptured disc revealed in the 23 April 1992 MRI.
22. As a direct and natural result of the 12 August 1990 compensable injury by accident, plaintiff has accelerated an arthritic condition in his right knee. Plaintiff has had to bear his weight on to his right side rather than his left side because of his compensable left foot injury.
23. There was a three year and seven month time period between when plaintiff sustained his injury by accident on 12 August 1990 and when plaintiff first starting having problems with his right wrist.
24. Plaintiff first sought medical treatment for a right wrist injury on 18 March 1994 at the Cape Fear Regional Hospital. Plaintiff reported that he had caught his right hand in the handle of his cane as he stumbled and fell.
25. There is a lack of convincing expert medical evidence to support a finding that the 12 August 1990 injury by accident caused or significantly contributed to the ligamentous injury in plaintiff's right wrist. Dr. Kouba admitted that his opinion with regard to this issue was based upon speculation and that he was unable to render a medical opinion based upon any degree of medical certainty.
26. Defendant-carrier began providing vocational rehabilitation services to the plaintiff beginning on 2 February 1995. Between 2 February 1995 and 25 February 1995, over one hundred employers were contacted by plaintiff's vocational rehabilitation case manager in an effort to locate employment for the plaintiff. Three of these contacts resulted in job leads for telemarketing positions and an appointment setter. Plaintiff did not seek out these positions at that time because he reasonably believed that he was about to undergo back surgery. Plaintiff's refusal to seek these job opportunities was reasonable. While Dr. Kouba testified that plaintiff could perform these jobs within the restrictions that he had set forth on behalf of plaintiff, he did not review what the duties that each of these positions required. No evidence was presented by defendants as to what the job duties for these positions required. None of these jobs was offered to plaintiff.
27. Plaintiff's wife owns a sandwich shop. Plaintiff has performed duties at this shop such as washing dishes, waiting on customers and pouring drinks. There is no evidence that he performs these duties on a regular basis and for direct or indirect compensation. There is a lack of convincing evidence to support a finding that plaintiff is an employee working at his wife's sandwich shop.
28. No order has ever been entered requiring plaintiff to participate in vocational rehabilitation. Because plaintiff can no longer return to work as a plasterer and has been unemployed for almost eight years, vocational rehabilitation services are reasonably necessary to help lessen plaintiff's disability.
29. Plaintiff is unable to stand more than thirty minutes at a time. He is unable to do repetitive squatting or lifting over thirty pounds. Plaintiff is unable to return to work as a plasterer.
30. As the result of his 12 August 1990 injury by accident, plaintiff has been unable to earn wages in his former position with defendant employer or in any other position from that date and continuing through the present.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 12 August 1990, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. G.S. § 97-2(6).
2. The Industrial Commission Form 21 Agreement for Compensation, approved by the Commission on 17 October 1990, created a presumption of continuing disability in plaintiff's favor. G.S. § 97-29; Kisiah v. W. R. Kisiah Plumbing,Inc., 124 N.C. App. 72, 476 S.E.2d 434 (1996); disc.rev. denied, 345 N.C. 343, 483 S.E.2d 169 (1997). Defendants have failed to produce sufficient evidence to rebut this presumption. Id. The fact that plaintiff reached maximum medical improvement does not equate with being able to earn his pre injury wage level, and does not rebut the presumption of continued disability. Brown v. S NCommunications, Inc., 124 N.C. App. 320, 477 S.E.2d 197
(1996).
3. Plaintiff's refusal to seek these job opportunities was justified given that he was reasonably under the belief that he was about to undergo back surgery. G.S. § 97-32.
4. There was no misrepresentation on the part of plaintiff or plaintiff's wife in their completion and submission of the Form 22 which resulted in the average weekly wage of $540.00 used on the Form 21. G.S. § 97-17. Because of the unreasonable delay by defendants in raising any issue regarding plaintiff's average weekly wage and the potential injurious results for plaintiff, under the doctrine of laches, the average weekly wage of $540.00 agreed upon in the approved Form 21 shall remain in effect. G.S. § 97-2(5).
5. As the result of his 12 August 1990 injury by accident and presumption of continued disability, plaintiff is entitled to have defendants continue to pay ongoing permanent and total disability compensation at the rate of $360.02 per week until plaintiff returns to work or until further Order of the Commission. G.S. § 97-29.
6. As the result of his 12 August 1990 injury by accident, plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred, including expenses related to treatment provided by Dr. Kouba for his right knee problem and for vocational rehabilitation services. G.S. § 97-25. Plaintiff is not entitled to have the defendants pay for medical treatment for the disc herniations in his lower back and in his neck and is not entitled to have the defendants pay for medical treatment provided by Dr. Kouba for his right wrist injury.Id.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the Deputy Commissioner's holding and enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing permanent and total disability compensation at the rate of $360.02 per week until plaintiff returns to work or until further Order of Industrial Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall provide vocational rehabilitation services to the plaintiff who shall cooperate with these efforts.
3. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as the result of his 12 August 1990 injury by accident, including the treatment his right knee condition.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to plaintiff is approved for counsel for plaintiff. From the amounts having accrued, this fee shall be deducted from the amounts owed to plaintiff and paid directly to counsel of plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
5. Defendants shall pay the costs, including an expert witness fee in the amount of $235.00 to Dr. Kouba and $80.00 to Rosa Britt.
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER